# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Q.H., by and through her parent, REGAN H., | No. 3:24cv1620 |
| Plaintiff | (Judge Munley) |
| v. | |
| SCRANTON SCHOOL DISTRICT, Defendant | |

## MEMORANDUM ORDER

Plaintiff Q.H., by and through her parent Regan H., asserts claims in this action pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq. ("IDEA").[1] Under the IDEA, "schools must: (1) identify children in need of special education services (Child Find); and (2) provide a [free appropriate public education ("FAPE")] to disabled students." D.K. v. Abington Sch. Dist., 696 F.3d 233, 244 (3d Cir. 2012).

Based upon provisions of the IDEA, the plaintiff filed a due process complaint against Defendant Scranton School District ("SSD") relating to Child Find and denial of FAPE and requested a hearing before a state special education hearing officer. After two days of testimony in June 2024, the hearing

---

[1] On January 28, 2025, the parties executed a stipulation authorizing plaintiff to withdraw her claims asserted under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act. (Doc. 24).

officer determined that the district met its obligations to the student. (Doc. 19-3). This action followed.

Before the court is a motion for summary judgment or for judgment on the administrative record filed by the district. (Doc. 29). Defendant SSD requests summary judgment on the following matters:

1) The appropriateness of Defendant SSD's evaluation report of Q.H;

2) The appropriateness of Q.H.'s individualized education program ("IEP");

3) Claims as to Defendant SSD's retention policies; and

4) Claims as to a school team's decision that Q.H. should progress to her next grade level with her same age peers.

(Doc. 30, Def. Br. in Supp. at 2).

On April 21, 2025, plaintiff filed a response and brief in opposition to the district's motion. (Docs. 31-32). Regarding the above-referenced claims, Q.H.'s brief in opposition provides:

> 3. **GRADE PROMOTION CHALLENGE AND EVALUATION REPORT CHALLENGE**
>
> Plaintiffs have neither requested nor amended their Complaint to ask for this relief. If Defendant reads Plaintiffs' Complaint as requesting that relief, it is mistaken. However, Plaintiffs feel the testimony as to Grade Promotion relevant as to Child Find, and the Hearing Officer and Record allowed this testimony and it should be considered by the Judge

> WHEREFORE, Plaintiffs request a ruling the Defendant failed in its Child Find Obligation.

(Doc. 32 at 4).

One of the principal purposes of summary judgment is to isolate and dispose of unsupported claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986). In responding to the motion, plaintiff clarifies that she is not claiming that the district violated the IDEA through an insufficient evaluation report. Rather, from the complaint, plaintiff's claim relates to the timeliness of that evaluation report as part of the argument that the district should have identified Q.H.'s need for special education services earlier. (Doc. 5 ¶ 3). Consequently, the district's motion for summary judgment will granted as to any claim challenging the evaluation report.

Plaintiff's brief in opposition also clarifies that her reference to grade promotion only relates to the alleged failures of the district to comply with its Child Find obligation and is not an independent claim. Grade promotion, however, factored into the special education hearing officer's analysis. He concluded from the administrative record as follows:

> Here, both parties—the student's mother and the District—have abysmally failed the student through the first three years of formal schooling. The parent has clearly failed the student in not ensuring that the student attends school. Each year, the student's attendance has improved (from 83 unexcused absences in kindergarten, to 50 days in 1st grade, to 41 days in 2nd grade), but it was still absolutely

3

unacceptable even in 2nd grade, to the point where truancy proceedings have been appropriately triggered.

Likewise, the District has clearly failed the student in not retaining the student in kindergarten at the end of that school year, in not returning the student to kindergarten early in the 1st grade year, and in promoting the student from 1st grade to 2nd grade. Incredibly, it appears on this record that the District is contemplating a repeat of its slavish devotion to grade-promotion by promoting the student to 3rd grade. Recognizing that the student's excessive absences are attributable to the student's family, the District is going to place into 3rd grade a student who is working through IEP goals on counting, number identification, letter identification, letter sounds, and, in effect, no writing skills.

Every adult involved in this child's education, on this record, has shrugged their shoulders in contemplating their duty to the student. The parent and fellow family members shrug their shoulders when it comes to delivering the child to school each day. The educators shrug their shoulders, blindly promoting the student from grade to grade, knowing that the student is nowhere near reading, calculating, or writing at the grade-level where the District has assigned the student.

This hearing officer is at a loss to find words to describe the educational abandonment, on this record, this child has experienced at the hands of adults, both family and educators.

These sad, but necessary, observations aside, this decision must explain the intersection of the student's special education needs and the District's legal obligations in that regard. In that narrow regard, the District has met its child-find obligations to the student. Even at this juncture, it is impossible to untangle the student's lack of age-normed or grade-normed achievement from the impact of absenteeism. The student has missed, without excuse,

4

> nearly a third of the instructional days from kindergarten through 2nd grade (not including time missed for excused absences and tardiness). There is simply no way to fault the District for any failure of its child-find obligation. And, ultimately, it accurately identified the student's needs for support related to the health impairments of anxiety and inattention, and related to S&L articulation and expressive/receptive language needs. Thus, there is no denial of FAPE regarding child-find.
>
> Still, the critical inflection points of grade-promotion from kindergarten to 1st grade and from 1st grade to 2nd grade were both missed opportunities to build, early on, foundational literacy skills for the student. Now, on the cusp of 3rd grade (when classmates are deepening intermediate literacy skills, moving steadily toward the District's middle school years in 5th grade), the student would be working on mastering the alphabet, letter identification, letter sounds, number identification, and counting. It is yet another opportunity to halt this forced, and needless, march through grade levels. The IEP team, including the building principal, will be ordered to meet to consider explicitly whether the student should be retained in 2nd grade for the 2024-2025 school year.

(Doc. 30-1, Final Decision and Order of M. McElligott, pp. 18-21).

Given these "critical inflection points of grade promotion," they will be considered as part of the evidence regarding plaintiff's Child Find claim. From their filings, the parties agree that the district's decisions regarding Q.H.'s grade promotions and the district's policies related to those promotions do not give rise to independent causes of action in this administrative appeal, such as for denial of FAPE. Accordingly, the district's motion for summary judgment will be granted in this regard. Q.H.'s promotion from 2nd grade to 3rd grade is a fact to be

5

considered, but it does not form the basis of any claim that the district violated its Child Find obligation as it relates to this action.

Finally, plaintiff's brief in opposition fails to reference the IEP implemented for Q.H. in 2024. A reading of plaintiff's complaint indicates that any reference to an IEP relates to the overarching argument that, like the evaluation report, it should have been set in motion earlier by the district. (Doc. 5, ¶¶ 3-4). Thus, the district's motion will be granted regarding any claim that the IEP implemented for Q.H. violates the IDEA. That claim is not at issue in this present action.

Consequently, for the reasons set forth above, the district's motion for summary judgment (Doc. 29) is **GRANTED** in part. To the extent that plaintiff's complaint (Doc. 5) may be read to challenge: 1) the appropriateness of Defendant SSD's evaluation report of Q.H; 2) the appropriateness of Q.H.'s IEP; 3) district policies regarding retention; and 4) claims as to a school team's decision that Q.H. should progress to her next grade, the district's motion for summary judgment is **GRANTED**. To the extent that the district's motion references judgment on the administrative record, the motion is **DENIED**, as arguments in the district's motion were related entirely to the four (4) matters addressed above.

As for the next steps in this litigation, the court previously granted plaintiff's request to supplement the administrative record with the testimony of Anita

O'Brien, the school psychologist who conducted cognitive and behavioral testing of Q.H. (Docs. 25-26). The court notes that counsel for plaintiff noticed the deposition of O'Brien "for use at trial of this case." (Doc. 28). From the record, that deposition appears to have been conducted on April 29, 2025. (Id.) On or before **May 23, 2025**, the parties shall meet and confer and file a joint status report as to how the parties intend to move this case forward for disposition.

Date: 5/16/25

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court